**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **ELSIE JUANITA CARTER** | * | **CIVIL ACTION NO. 06-0335** |
| **VERSUS** | * | **JUDGE JAMES** |
| **MATT KEIL, KEIL & GOODSON, P.A., and CONTINENTAL CASUALTY COMPANY** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are motions for summary judgment filed by plaintiff Elsie Juanita Carter ("Carter") and defendants Matt Keil ("Keil"), Keil & Goodson, P.A. ("Keil & Goodson"), and Continental Casualty Insurance Company ("Continental Casualty") (collectively "Defendants"). [Doc. Nos. 17, 22]. Carter and Defendants seek summary judgment with respect to the claims of intervenor Louisiana Commerce & Trade Association Self-Insurers Fund ("LCTA"). LTCA opposes the motions. For reasons stated below, it is recommended that Carter's and Defendants' motions be **GRANTED and that LTCA's claims be dismissed with prejudice.**

### BACKGROUND

The facts relevant to the pending motions are undisputed for purposes of these motions.

On or about August 13, 2003, Carter, while acting in the scope of her employment with Eternal Blessings, suffered injuries when she slipped and fell while shopping at a retail store owned and operated by Wal-Mart Louisiana, LLC ("Wal-Mart"). Sometime after the incident, Carter filed a claim with LCTA, Eternal Blessings' workers' compensation carrier, and received over $48,000 in benefits pursuant to the Louisiana Workers' Compensation Act, La. Rev. Stat. 23:1021, *et seq.*

During her hospitalization, Carter retained defendant Keil of the law firm Keil and

Goodson as counsel. Keil, an Arkansas attorney, contacted LTCA in September 2003 and promptly filed an undisputed claim for workers' compensation benefits. Shortly thereafter, Keil entered into settlement negotiations with Wal-Mart regarding its liability for Carter's injuries.

Throughout his negotiations with Wal-Mart, Keil kept in contact with Frances Meliet ("Meliet"), one of LCTA's claims adjusters. On June 2, 2004, he contacted Meliet and requested information on the amount of benefits LCTA had paid Carter, so that he could present the figures to Wal-Mart during settlement negotiations. LCTA complied. In early August, toward the end of the prescriptive period, LCTA requested an update from Keil on the status of the negotiations, and he responded that they were still ongoing. On January 6, 2005, more than one year after Carter's injury occurred, Keil informed LCTA that suit had been filed in Arkansas on December 15, 2004.

Neither LCTA nor Carter filed suit within one year of the injury. After the one-year anniversary of Carter's injury passed in August 2004, Wal-Mart determined that Keil had not filed suit on Carter's behalf in Louisiana and terminated all negotiations with Keil, relying on Louisiana's one-year prescriptive period for negligence actions. *See* La. Civ. Code art. 3492.

Keil filed suit in Arkansas arguing that, for various reasons, its three year limitations period should apply. Wal-Mart responded in March 2005 with a motion to dismiss, claiming that Arkansas was an improper venue, that Louisiana law applied, and that Carter's claims had prescribed. The Arkansas federal court transferred the case to this Court, at which time LCTA intervened seeking reimbursement of the workers' compensation benefits it had paid Carter. In an oral order entered on February 8, 2006, the Court dismissed the case against Wal-Mart on the grounds of prescription.

On January 30, 2006, Carter filed suit in Louisiana state court against Keil; his firm, Keil

& Goodson; and the firm's malpractice insurer, Continental Casualty, alleging that Keil committed malpractice when he failed to file suit against Wal-Mart within the prescriptive period. Defendants removed the case to this Court on March 2, 2006. LCTA intervened in this matter on May 1, 2006, claiming that, pursuant to Louisiana's Workers' Compensation Act ("the Act"), it was subrogated to any and all of Carter's claims, including her malpractice action against Defendants, and thus was entitled to reimbursement of compensation benefits it had paid to Carter. LCTA did not allege that it had its own independent legal malpractice claim against Keil.

Carter and Defendants seek summary judgment on the same grounds. First, they argue that LCTA's claim for reimbursement has prescribed because more than one year has passed since Carter sustained her injuries, and LCTA, which had an independent right to sue for reimbursement on its own behalf, failed to do so. Carter and Defendants also claim that LCTA possesses no right of reimbursement in this matter because Keil, who allegedly committed malpractice, is not a "third person" as defined in the Act. Finally, to the extent that LCTA purports to join in Carter's malpractice claim against Defendants, Defendants claim that no attorney-client relationship ever existed between Keil and LCTA.

In opposition, LCTA does not seriously dispute that its claim for reimbursement has prescribed. Instead, LCTA suggests that prohibiting it from obtaining reimbursement in this matter will enable Carter to obtain a double recovery -- workers' compensation benefits from LCTA and money damages from Defendants -- and would contravene the spirit of the Act. LCTA also argues that its reimbursement claim is valid because Keil, pursuant to Louisiana case law, is a "third person" under the Act. Finally, in response to the summary judgment motions, LCTA for the first time suggests that it had an attorney-client relationship with Keil and should therefore be allowed to join directly in Carter's malpractice action.

## LAW AND ANALYSIS

Summary Judgment Standard

Summary judgment is appropriate when the evidence before the Court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Louisiana's Workers' Compensation Act

The hallmark of Louisiana's workers' compensation scheme is that it provides an injured employee with an exclusive, and (at least theoretically) faster and more certain, means of

recovery in lieu of suing the employer and fellow employees in tort. *See* La. Rev. Stat. § 23:1032. Despite the exclusivity provisions of the Act, an injured employee still possesses a cause of action against any third persons who caused or contributed to his injuries. *See* La. Rev. Stat. § 23:1101(A). Similarly, the employer of the injured employee also has certain rights with respect to a negligent third person. First, the employer, or its workers' compensation insurer as its legal subrogee, *see* La. Rev. Stat. § 23:1162(D), may bring a direct action against the third person to recover any compensation paid to the injured employee. *See* La. Rev. Stat. § 23:1101(B). Second, the employer or its insurer may intervene as a party plaintiff in the injured employee's suit against the third person and assert a claim for reimbursement of compensation from the employee's total recovery. *See* La. Rev. Stat. § 1102(A). In both cases, the employer's or insurer's recovery is limited to the amount of compensation benefits paid or obligated to the employee, plus, in some circumstances, a credit toward any future benefits. *See* La. Rev. Stat. § 23:1101(B).

Discussion

Article 3492 of the Louisiana Civil Code provides that "[d]elictual actions are subject to a liberative prescription of one year," which begins to run from the day the injury is sustained. La. Civ. Code art. 3492. Louisiana courts have regularly held that Article 3492 applies to employee, employer, and insurer (as subrogee of an employer) actions under the Act against a third person and also to an insurer's right of intervention. *See, e.g., Louviere v. Shell Oil Co.*, 83-1093, p. 6 (La. 10/17/83); 440 So.2d 93, 95 (describing claims of employee and employer as being based on the same cause of action and subject to Article 3492); *Bradley v. DOTD*, 92-0719, p. 5-6 (La. App. 4 Cir. 1/28/93); 613 So.2d 771, 773 (judging an employer's intervention in accordance with Article 3492). Thus, an insurer must either file a direct suit against a third person within one

year from the date the employee sustained his or her injury, or intervene in the employee's timely suit against the third person. Failure to do so bars an insurer from later seeking recovery from the third person.

It is undisputed that LCTA failed to file suit against Walmart within a year of the injury. Thus, its rights to seek reimbursement from any third party have prescribed, and its attempt to intervene in this action is untimely.

LCTA has conceded as much and does not claim that the prescriptive period was tolled in any way. LCTA's only argument against prescription is that permitting Carter to recover against Defendants without having to reimburse LCTA would result in a double recovery for Carter, a result it claims the Act was designed to prevent. As is discussed in more detail below, this argument is erroneous. Therefore, to the extent that LCTA seeks reimbursement from the plaintiff or from Defendants as "third persons" under the Act, its claims are prescribed.

Defendants as a "Third Person"

Even if LCTA's claim for reimbursement were not prescribed, it would still have to establish that it was entitled to reimbursement from Carter's potential recovery against Defendants for legal malpractice; that is, LCTA would have to prove that Defendant Keil is a "third person" as defined under the Act and interpreted in Louisiana courts.

So far as the undersigned has been able to determine, this is an issue of first impression in this court, and the few state and federal courts which have considered the issue have come to differing conclusions, based primarily on the exact language of the statute each court was considering.

The only case in Louisiana to consider this issue is the recent Louisiana Third Circuit Court of Appeal decision in *Head v. Continental Cas. Co.*, 06-236, (La. App. 3 Cir. 5/31/06)

6

2006 La. App. LEXIS 1262. *Head* specifically held that an employee's attorney is not a "third person" under the Act, and that a workers' compensation insurer therefore cannot seek reimbursement in an employee's legal malpractice action. The court found that under the Act's definition of a "third person", an attorney who commits malpractice in connection with an employee's tort claim neither causes a work-related injury nor aggravates a previous work-related injury. This Court, while not bound by this decision, is obliged to follow it unless it is convinced that the Louisiana Supreme Court would decide the issue differently. *See Texas Dep't Hous. & Community Affairs v. Verex Assurance*, 68 F.3d 922, 928 (5th Cir. 1996) ("a decision by an intermediate appellate state court 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'") (quoting *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)). There is no basis for a belief that the Louisiana Supreme Court would do so.

Whether Defendants are "third persons" under the Act is a matter of statutory construction. Under Louisiana's rules for statutory construction, "[W]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." *New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans*, 94-2223, p. 11 (La. 4/10/95); 653 So.2d 538.

> Further, it is a well-recognized and long-established rule of statutory construction that statutory provisions should be construed along with the remainder of the statute, and all statutes on the same subject matter should be read together and interpreted as a whole to effect the legislative intent and should be construed in such a way as to reconcile, if possible, apparent inconsistencies or ambiguities so that each part is given effect. Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. It is presumed that the intention of the legislative branch is to achieve a consistent body of law. The starting point for the interpretation of any statute, then, is the language of the statute itself.

7

*Pepper v. Triplet*, 03-0619, p. 31-2 (La. 01/21/04); 864 So.2d 181, 193-4 (internal citations omitted). With these principles in mind, the undersigned turns to the language of the Act defining a "third person."

The Act actually contains two definitions of a "third person." Section 23:1101 of the Louisiana Revised Statutes, the section of the Act setting forth the rights of an employee and employer against a "third person", provides in pertinent part:

> A. When an injury or compensable sickness or disease for which compensation is payable under [the Act] . . . has occurred under circumstances creating in some person (in this Section referred to as "third person") other than [the employee's employer or fellow employees] . . . , a legal liability to pay damages in respect thereto, the aforesaid employee or his dependents may claim compensation under [the Act] and the payment or award of compensation hereunder shall not affect the claim or right of action of the said employee . . . against such third person . . .
> . . . .
> C. For purposes of this Section, "third persons" shall include any party who causes injury to an employee at the time of his employment or at any time thereafter provided the employer is obligated to pay benefits under [the Act] because the injury by the third party has aggravated the employment related injury.

La. Rev. Stat. § 23:1101(A), (C). According to subsection A, a "third person" is merely anyone outside of an employee's employer or fellow employees who is legally liable to pay the employee damages **because of the work-related injury**. Subsection C, which was added in 1989, states that "third persons" include both those who cause the employee's work-related injury and those who **later aggravate the injury such that an employer's obligation to pay benefits is extended**.

A claim for legal malpractice does not fall within the definition of a "third party" under either of these sections. There is no basis for a claim that LCTA's obligation to pay compensation benefits arose from any alleged legal malpractice, or that legal malpractice caused an aggravation of the plaintiff's physical condition which led to an increased obligation on the part of LCTA. *See* La. Rev. Stat. § 23:1021(8) (defining "injury" as "injuries by violence to the physical structure of the body and

8

such disease or infections as naturally result therefrom."). Instead, Keil is alleged to have deprived Carter of her right of action against Wal-Mart.

Both *Johnson v Fireman's Ins. Co.,* 82-0778 (La.12/10/83); 425 So.2d 224, and *Travelers Ins. Co. v. Joseph,* 95-0200 (La. 6/30/95); 656 So.2d 1000, cited by LCTA, are inapplicable to the present situation. Both cases involve claims against uninsured motorist carriers. An uninsured motorist carrier's liability is a contractual one arising out of the physical injury to the victim caused by a tortfeasor whose insurance is insufficient to allow the plaintiff full recovery. In contrast, a malpractice claim against an attorney arises out of a separate act of negligence.

Also guiding the undersigned's interpretation of a "third person" as it applies to Keil is the principle, reiterated by the Louisiana Supreme Court, that laws in derogation of common law are to be strictly construed and "given the effect which makes the least rather than the most change in the existing body of law." *Monteville v. Terrebone Parish Consol. Govt't*, 90-0298, p. 9 (La. 9/13/90); 567 So.2d 1097, 1100-01; *see Touchard v. Williams*, 92-2919, p. 21-2 (La. 4/12/93); 617 So.2d 885, 892; *Keelen v. State Dep't of Culture and Recreation*, 84-1710, p. 3 (La. 2/25/85); 463 So.2d 1287, 1289. The portion of the Act allowing an employer to recover against a "third party" for injuries that it did not actually suffer is an exception to the common law rule that only an injured party can bring an action to recover for the injury. *See* H. Alston Johnson, III, 14 Louisiana Civil Law Treatise, Workers' Compensation Law & Practice § 367, at 219 (4th ed. 2002) ("In fact, were it not for the Act, the employer would probably have no cause of action against the tortfeasor at all.").

LCTA argues that if it is not permitted to intervene and assert a claim for reimbursement Carter will obtain precisely what the Act was designed to prevent: double recovery. *See* La. Rev. Stat. § 23:1101(B) (permitting employer or insurer to intervene for reimbursement from

employee's recovery against third person); *Fontenot v. Hanover Ins. Co.*, 66-425, p. 2 (La. 6/23/80); 385 So.2d 238, 239 ("The underlying policy of the apportionment scheme in providing that an employer's claim for reimbursement of compensation actually paid shall take precedence is merely that the employee should not be compensated doubly for the same element of his damages."). While Keil's exclusion from the definition of a "third person" may in fact yield such a result, a review of Louisiana case law shows that in this case double recovery may be acceptable.

Double recovery, while disfavored generally, is not prohibited in every circumstance; in particular as relates to this case, it is permitted and protected when an employer or insurer fails to intervene in an employee's suit against a third person. *See Guidry v. Coregis Ins. Co.*, p. 21 (La. App. 3 Cir. 12/29/04); 896 So.2d 164, 183 ("[I]f the independent source, here, the workers' compensation carrier, does not intervene to recoup the benefits it's already paid, the plaintiff may recover the amount of the benefits from the tortfeasor."); *Compton v. North River Ins. Co.*, 9419, p. 15 (La. App. 1 Cir. 6/29/73); 281 So.2d 848, 853 (same). Thus, if the employer fails to file suit on its own behalf or to intervene in a timely-filed suit, the employee is free to recover the amounts paid by the employer.

The exceptional nature of an employer's cause of action under the Act, together with the decision of the only Louisiana court to consider the issue, and the fact that double recovery is not necessarily prohibited under the circumstances of this case, compels an interpretation of "third person" that excludes employees' attorneys who allegedly commit malpractice.

<u>Direct Action for Malpractice</u>

To the extent that LCTA purports to assert a direct claim against Keil based on the alleged "relationship" it had with Keil, the undisputed facts fail to support such a claim. A claim

for legal malpractice requires a party to demonstrate (1) the existence of an attorney-client relationship, (2) negligent representation by the attorney, and (3) loss caused by that negligence. *Costello v. Hardy*, 03-1146, p. 16 (La. 1/21/04); 864 So.2d 129, 138. Although the existence of an attorney-client relationship "turns largely on the client's subjective belief that it exists," *Louisiana State Ass'n v. Bosworth*, 84-1816, p. 10-11 (La. 1/13/86); 481 So.2d 567, 571, that belief must be reasonable under the facts of a particular case. *See In re Bordelon*, 04-0749, p. 18 (La. 1/7/05) 894 So.2d 315, 322.

A review of the facts of this case and the affidavits of Keil and Meliet, LCTA's claims adjuster, demonstrates that no attorney-client relationship existed between Keil and LCTA. First, it should be noted that in its petition LCTA did not allege that it was bringing a direct action against Keil, or that an attorney-client relationship existed between them. Instead, it based its claim solely on its rights under the workers compensation statute. Next, while LCTA asserts in its brief that a "relationship" existed between it and Keil, it never characterizes that relationship as an attorney-client one. In fact, LCTA never claimed that an **attorney-client** relationship existed between itself and Keil until it belatedly filed its statement of disputed material facts in connection with its opposition to the current motions.

In its original motion to intervene in these proceedings, LCTA cited only to its statutory right to intervene under La. Rev. Stat. § 23:1011 as its basis for intervening in the "cause of action of plaintiff, Elsie Juanita Carter, for legal malpractice against **her** former personal injury attorney." (Motion to Intervene, pp. 4-5, emphasis added). It did not allege that it was Keil's client as well. In addition, LCTA intervened on its own behalf in the prior untimely suit, and was not represented by Keil when it did so.

An examination of the actual facts asserted by LCTA shows that any subjective belief that

11

it may have had that it was being represented by Keil was unreasonable. The facts show that Keil, who represented Carter in her claim for compensation benefits from LTCA (a representation which was necessarily adverse to LCTA), regularly kept in contact with Meliet about Carter's medical bills, requested information while in negotiations with Wal-Mart on the amount of benefits LTCA had paid Carter, and understood that, if he settled the suit, Carter would be obligated to reimburse LTCA, and he would be compensated by LTCA for the amounts paid to it pursuant to the Act. *See* Meliet's Affidavit, ¶¶ 6-9, 14, 15. While these facts suggest, as LTCA claims, that a "relationship" existed, the relationship was one derived from the provisions of the Act. It did not possess the characteristics of an attorney-client relationship.

Keil was required under the Act to notify LTCA if he filed suit on Carter's behalf, so that LCTA could intervene in the suit. If LCTA had failed to intervene after notification, Keil could have collected the entire amount of the benefits paid to Carter, along with the other damages she claimed, without owing reimbursement to LCTA. There was no written agreement between Keil and LCTA authorizing Keil to represent it, and the lawsuit that Keil did file was not filed on LCTA's behalf, only on Carter's.

Nothing in the communications between these two sophisticated players suggests any reasonable basis for a belief that Keil was doing anything for LCTA other than complying with his obligations under the Act. Therefore, no attorney-client relationship existed between Keil and LCTA, and it has no cause of action against him in malpractice.

<u>Conclusion</u>

For the reasons stated above, it is recommended that the motions for summary judgment filed by Carter and Defendants be **GRANTED and that LTCA's claims in this matter be DISMISSED with prejudice.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 30th day of June, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE